United States District Court
Southern District of Texas
FILED

JUN 1 6 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| **LANDSTAR INVESTMENTS II, INC.** § | |
| § | CIVIL ACTION NO. **B-03-115** |
| vs. § | |
| § | In Admiralty Pursuant to |
| **O/S BARRUELO** § | Rule 9(h) of the Federal |
| and its appurtenances, *in rem* § | Rules of Civil Procedure |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Landstar Investments II, Inc. complains herein of the **O/S Barruelo, Official Number 918566**, *in rem*:

1. Plaintiff is the assignee of States Resources Corp. which purchased the underlying ship's mortgage from Wells Fargo Bank, N.A., successor-in-trust to Mercantile Bank, National Association.

2. The **O/S Barruelo, Official Number 918566**, is a shrimp trawling vessel currently at the dock of Chapa Trawlers on Gator Court located within the Shrimp Basin of the Brownsville Navigation District and within the territorial jurisdiction of this Court. The **O/S Barruelo** is owned by **Jorge Vasquez, Sr.; Rosa Vasquez; and Jorge Vasquez Jr.**, who may be served at 35 Terrace Drive, Brownsville, Texas 78521 by delivery of summons and complaint to each of them.

3. This is a case involving admiralty and maritime jurisdiction within the meaning of Rule 9(h) and Supplemental Rule C of the Federal Rules of Civil Procedure. This Court has subject matter jurisdiction under 46 U.S.C. § 31342 and

28 U.S.C. § 1333. The Defendant vessel is now and will continue to be within this district and within the jurisdiction of this Court.

4. On or about November 10, 1997, Defendants **Jorge Vasquez, Sr.; Rosa Vasquez; and Jorge Vasquez, Jr. (hereinafter collectively "Vasquez")** executed a Promissory Note in the principal amount of One Hundred Forty Thousand and no/100ths ($140,000.00) Dollars payable to Mercantile Bank, National Association in installments as set out therein. A copy of such note is attached hereto as Exhibit A.

5. On or about October 19, 2001, by Allonge attached to that note, Wells Fargo Bank, N.A., successor-in-interest to Mercantile Bank, National Association, conveyed the described Promissory Note to States Resources Corp. which, in turn, transferred such note to Plaintiff **Landstar Investments II, Inc. (hereinafter "Landstar")**.

6. As security for the payment of the Promissory Note (Exhibit A), Vasquez executed a First Preferred Mortgage on the O/S Barruelo, Official No. 918566. A copy of this mortgage is attached as Exhibit B.

7. Landstar has made demand for the sums due from Vasquez and the O/S Barruelo on numerous occasions, but the account has not been paid.

8. Landstar has found it necessary to retain the firm of Fleming & Hernandez, P.C. to collect this debt and should recover its reasonable attorney's fees incurred.

Landstar prays that process issue against the O/S Barruelo and that all persons claiming any interest in the vessel be cited to appear and answer in this case. Landstar further prays that the mortgage described herein be declared superior and preferred to any other liens against the O/S Barruelo in the amount of One Hundred Forty Thousand and no/100ths ($140,000.00) Dollars plus interest on the unpaid balance at Ten (10%) Percent per annum from and after November 10, 1997. Landstar prays that the preferred mortgage described herein be declared superior to the

interests, liens, mortgages or claims of all persons, firms or corporations. Landstar further prays it have judgment against the O/S Barruelo in the amount of One Hundred Forty Thousand and no/100ths ($140,000.00) Dollars plus all accrued interest on the unpaid balance at Ten (10%) Percent per annum, costs of court, post-judgment interest and all other amounts as mentioned above.

Landstar prays this Court prescribe the manner in which notice of this suit shall be given as required in the Ship Mortgage Act of 1920, as amended. Landstar prays the O/S Barruelo be condemned and sold by the United States Marshal and that the proceeds from the sale be paid over to Landstar to be applied to its judgment and lien. Landstar further prays for such other and further relief to which it may be justly entitled.

DATED this _16_ day of __JUNE__, 2003.

Respectfully submitted,

**FLEMING & HERNANDEZ, P.C.**
1650 Paredes Line Road, Suite 102
Brownsville, Texas  78521-1602
Telephone:  (956) 982-4404
Telecopier:  (956) 982-0943

by: _/s/ Tom Fleming_
Tom Fleming
State Bar of Texas No. 07133000
Federal I.D. No. 1188

**ATTORNEYS FOR PLAINTIFF,
LANDSTAR INVESTMENTS II, INC.**

PROMISSORY NOTE

$140,000.00                                          Brownsville, Texas
                                                     November 10, 1997


    FOR VALUE RECEIVED, I, WE, or either of us promise to pay to the order of MERCANTILE BANK, NATIONAL ASSOCIATION at its offices in Brownsville, Cameron County, Texas, the sum of ONE HUNDRED FORTY THOUSAND AND NO/100 DOLLARS ($140,000.00), in legal and lawful money of the United States of America, with interest thereon from the date of funding hereof at the Base Rate (hereafter defined) in effect from day-to-day as established by Mercantile Bank, N.A., until maturity on October 27, 2000, which Base Rate is currently ten percent (10%) per annum. This Note is payable as follows, to-wit:

    In the months of January, August, September, October, November and December of each calendar year during the term of this Note until maturity, principal and interest shall be due and payable in monthly installments of TWO THOUSAND DOLLARS ($2,000.00) each, with the first of such payments beginning December 10, 1997 and continuing regularly thereafter in accordance with the payment schedule set forth herein.

    In the months of February, March, April, May, June and July of each calendar year during the term of this Note until maturity, principal and interest shall be due and payable in monthly installments of FIVE HUNDRED DOLLARS ($500.00) each, with the first of such payments beginning February 10, 1998 and continuing regularly thereafter in accordance with the payment schedule set forth herein;

    One final payment of the entire balance of principal and accrued unpaid interest shall be due and payable on October 27, 2000.

    As to each monthly payment, interest shall be calculated on the unpaid principal to the date of each installment paid and the payment made credited first to the discharge of the interest accrued and the balance to the reduction of the principal

---

First Preferred Ship's Mortgage Note - Page 1

EXHIBIT NO. A

As used herein, "Base Rate" means a varying rate per annum which shall from day to day be equal to the lesser of (a) the sum of the rate of interest per annum then most recently established by Mercantile Bank, N.A. as its Base Rate, in effect from day to day plus 0%, each such change in the rate of interest charged hereunder to become effective, without notice to Borrower, on the effective date of each change in the Office Base Rate, computed on the basis of a year of 360 days and for the actual number of days elapsed (including the first day but excluding the last date), or (b) the Maximum Rate (as hereinafter defined). As used herein the term "Maximum Rate" shall mean the Maximum Rate of nonusurious interest permitted from day to day by applicable law, including as to Article 5069-1.04, Vernon's Texas Revised Civil Statutes Annotated (and as the same may be incorporated by reference in other Texas statutes), but otherwise without limitation, that rate based upon the "indicated rate ceiling."

All past due principal and interest on this Note shall bear interest from the maturity thereof until paid at the maximum legal rate allowed in the State of Texas or by Federal law.

In the event of default in the payment of any installments, either principal or interest, when due, or in the actual performance of any of the "events of default" specified in said Mortgage, the holder hereof may, at its option, declare all of the remainder of said debt due and payable, and any failure to exercise said option shall not constitute a waiver of the right to exercise same at any other time.

If suit is brought on this Note, or if it is placed in the hands of an attorney for collection, or collected through the Probate or Bankruptcy Courts, the undersigned agrees to pay the expenses of collection, including reasonable attorney's fees.

Each maker, surety and endorser hereon waives grace, presentment and demand for payment, notice of nonpayment, protest and notice of protest, and consents that the time of payment may be extended from time to time without any notice to any of them.

Full authority is hereby given the legal holder hereof to apply hereon any funds in the possession of such holder belonging to any obligor or endorser hereon to the payment of this note or to any other obligation owing to said Bank; or to sell any collateral security, assigned or attached, at public or private sale without notice, at any time after maturity or any time before maturity in the event the holder feels unsafe or insecure. The holder may become the purchaser at such sale.

Borrower and Lender intend that the loan evidenced by this Note (the "Loan") shall be in strict compliance with applicable usury laws. If at any time any interest contracted for, charged, or received under this Note or otherwise in connection with the Loan would be usurious under applicable law, then regardless of the provisions of this Note or the documents and instruments evidencing, securing or otherwise executed in connection with the Loan or any action or event (including, without limitation, prepayment of principal hereunder or acceleration of maturity by the Lender) which may occur with respect to this Note or the Loan, it is agreed that all sums determined to be usurious shall be immediately credited by the Lender as a payment of principal hereunder, or if this Note has already been paid, immediately refunded to Borrower. All compensation which constitutes interest under applicable law in connection with the Loan shall be amortized, prorated, allocated and spread over the full period of time any indebtedness is owing by Borrower, to the greatest extent permissible without exceeding the applicable maximum rate allowed by applicable law in effect from time to time during such period.

IN THE EVENT ANY ITEM, ITEMS, TERMS OR PROVISIONS CONTAINED IN THIS INSTRUMENT ARE IN CONFLICT WITH THE LAWS OF THE STATE OF TEXAS, OR FEDERAL LAW, THIS INSTRUMENT SHALL BE AFFECTED ONLY AS TO ITS APPLICATION TO SUCH ITEM, ITEMS, TERMS OR PROVISIONS, AND SHALL IN ALL OTHER RESPECTS REMAIN IN FULL FORCE AND EFFECT. IT IS UNDERSTOOD AND AGREED THAT IN NO EVENT AND UPON NO CONTINGENCY SHALL THE BORROWER, OR ANY PARTY LIABLE THEREON, OR THEREFORE, BE REQUIRED TO PAY INTEREST IN EXCESS OF THE RATE ALLOWED BY THE LAWS OF THE STATE OF TEXAS OR FEDERAL LAW, IF SUCH LAW PERMITS A GREATER RATE OF INTEREST. THE INTENTION OF THE PARTIES BEING TO CONFORM STRICTLY TO THE USURY LAWS AS NOW OR HEREAFTER CONSTRUED BY THE COURTS HAVING JURISDICTION.

This Note is secured by a First Preferred Ship's Mortgage of even date herewith covering the whole of the fishing vessel BARRUELO, Official No. 918566, executed by Jorge Vasquez, Sr., Rosa Vasquez, and Jorge Vasquez, Jr. in favor of MERCANTILE BANK, NATIONAL ASSOCIATION, Brownsville, Texas.

_____
Jorge Vasquez, Sr.

_____
Rosa Vasquez

_____
Jorge Vasquez, Jr.

# ALLONGE

This ALLONGE is affixed to and made a part of that certain Promissory Note dated November 10, 1997, made by Jorge Vasquez, Sr. and Rosa Vasquez and Jorge Vasquez, Jr. to the order of Mercantile Bank, National Association whose successor in interest is Wells Fargo Bank Texas, N.A., in the face principal amount of $140,000.00, as such evidence of indebtedness has been amended, modified, supplemented, renewed, endorsed, negotiated, sold, assigned, conveyed, or otherwise transferred to date.

PAY TO THE ORDER OF STATES RESOURCES CORP ("BUYER"), WITHOUT RECOURSE, REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, EXCEPT AS EXPRESSLY PROVIDED IN THAT CERTAIN LOAN SALE AGREEMENT, DATED AS OF October 19, 2001, BETWEEN WELLS FARGO BANK, N.A. AND BUYER.

Dated: October 19, 2001


"Seller"

Wells Fargo Bank, N.A.
Successor in interest to Mercantile Bank, National Association

By: _____
Name: David E. Canales
Title: Assistant Vice President

1

Official No. 918566

# This First Preferred Mortgage, on the vessel(s) "BARRUELO"

dated November 10, 19 97

Amount of Mortgage $ 140,000.00

Maturity Date _____ 19 ___

and made by Jorge Vasquez, Sr., Rosa Vasquez, and Jorge Vasquez, Jr. (each being a 1/3 Mortgagor of the subject vessel) 5014 Boca Chica Blvd., Brownsville, Texas 78521

(hereinafter called "Owner"), to Mercantile Bank, N.A. (100% Mortgagee)
835 E. Levee St., Brownsville, Texas 78520
_____ , (hereinafter called "Mortgagee").

## WITNESSETH:

WHEREAS, the maker, Mortgagor herein, is the sole owner of the whole of the vessel (if more than one vessel is mortgaged hereunder, the term "vessel" means each such vessel) hereinafter named and described, and is justly indebted to the Mortgagee, as evidenced by promissory note dated November 10, 19 97, in the principal amount of $ 140,000.00 , payable to the order of Mortgagee as follows:

As therein provided.

and has agreed to give this Mortgage as security, and has authorized and directed the execution and delivery hereof.
NOW, THEREFORE, in consideration of the premises and for other good and valuable considerations, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the ___ Oil Screw ___
(Type of Vessel) named below and further described in her (their) last marine document(s) issued and identified as follows:

| Name | Home Port | Official Number | Gross Tons | Net Tons |
|---|---|---|---|---|
| BARRUELO | Falling Waters, WV | 918566 | 105 | 84 |

| Enrollment Number | Place Issued | Date Issued |
|---|---|---|
| | | |

together with all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference;

TO HAVE AND TO HOLD all and singular the above described vessel unto Mortgagee, its successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920.

Owner agrees to pay said indebtedness with interest thereon as herein and in said note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject thereto.

### ARTICLE I. — Particular Covenants of Owner

Owner covenants as follows:

1. Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the good faith affidavit filed herewith and of said note has been duly taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of _____ and authorized to do business and in good standing in any other State wherein Owner regularly does business.

2. Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinbelow be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transaction.

3. Owner shall at his (its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured and, in the aggregate as to all vessels mortgaged herein, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs towage, employees' compensation and/or other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgagee for account of Mortgagee and Owner as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify, Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefor have been fully paid. Owner shall maintain all such insurance unimpaired by any act, breach of warranty or otherwise.

4. Owner shall comply with and shall not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof, nor remove the vessel from the limits of the United States save on voyages with the intent of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel.

EXHIBIT NO. B

5. Neither the Owner, Agent nor Master of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or salvage.

6. Owner shall place and keep prominently in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel as specified by Mortgagee any notice of this Mortgage required by Mortgagee, and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7. Owner shall pay when due all taxes, assessments, governmental charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel. Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8. If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

9. Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's related accounts and records; and shall certify quarterly and, if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10. Owner shall not, without the prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein nor charter her except to persons and for uses lawful for American vessels and then only provided said insurance be unaffected thereby or adequately replaced; nor, if a corporation, merge or consolidate with any other person, firm or corporation, or dissolve.

11. From time to time Owner shall execute and deliver such other and further instruments and assurance as in the opinion of Mortgagee's counsel may be required to subject the vessel more effectually to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1 of Article II.

## ARTICLE II. – *Default*

1. In any one or more of the following events, herein termed "events of default," viz.:

(a) Default in the punctual payment of the principal of the note secured hereby or any instalment thereof, or in the due and punctual performance of any provision of Sections 3, 4, 5, 6, 8 and 10 of Article I hereof, or attempt to violate Sections 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein; or

(b) Commission of an act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earnings, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collection thereof until the time above limited for the payment thereof;

then, and in every such case, Mortgagee may:

(A) Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at the rate of 10% per annum;

(B) Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel. Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(C) Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and/or Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of Owner in his (its) name and stead to make all necessary transfers of the vessel thus sold.

2. In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3. Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

4. The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgment, and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST: To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate of 10% per annum; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND: To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured instalments of principal and then of any or all unmatured instalments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

5. All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at 10% per annum, and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

ARTICLE III. — *Possession Until Default*

Until one or more of the events of default hereinbefore described, Owner shall be permitted to retain actual possession and use of the vessel.

ARTICLE IV. — *Sundry Provisions*

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Owner herein, "his" shall mean "their."

FUTURE ADVANCES   This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name and its corporate seal to be affixed hereto by its proper officers thereunto duly authorized.

_____
JORGE VASQUEZ, SR.

_____
ROSA VASQUEZ

_____
JORGE VASQUEZ, JR.

## ACKNOWLEDGMENT

THE STATE OF TEXAS  }

COUNTY OF CAMERON  }

This instrument was acknowledged before me on the 10th day of November, 1997 by JORGE VASQUEZ, SR., ROSA VASQUEZ, and JORGE VASQUEZ, JR.

_____
Notary Public in and for the
State of Texas

My Commission Expires:

## AFFIDAVIT AS TO GOOD FAITH, LIENS, ETC.

STATE OF _____, COUNTY OF _____, ss.:

_____
being (severally) duly sworn, depose(s) and say(s) that   he is (they are) the
{ individual Mortgagor(s) }
_____ of _____, the corporation } described in and who (which) executed the foregoing mortgage; and that the said mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditors of the Mortgagor or any lienor of the mortgaged vessel(s). There are no liens, encumbrances, charges or mortgages outstanding against said vessel, other than the lien of the foregoing mortgage.

If Mortgagor is a corporation, this affidavit is made pursuant to authority of its Board of Directors.

Subscribed and sworn to before me this _____

day of _____, 19____   _____
       (SEAL)

_____          _____
(Notary Public)                   Signature(s) of Affiant(s)

OATH OF CITIZENSHIP OF PROPER OFFICER OF MORTGAGEE IS FILED
SIMULTANEOUSLY WITH PRESENTATION OF THIS MORTGAGE FOR RECORDING.

Neither the mortgagors, the vessel owner, nor the managing owner, ship's husband, master, nor any person to whom the management of the vessel is entrusted, whether appointed by the mortgagors, as owners of the said vessel, or by a charterer, or by an owner pro hac vice thereof, has or shall have any right, power or authority to create, incur, or permit to be imposed upon this vessel any lien whatsoever other than for crew's wages, wages of stevedores or salvage and a notice reading as follows, printed in plain type of such size that the paragraph of the reading matter shall cover a space not less than six inches wide by nine inches high, framed under glass, shall be placed and kept prominently in the chart room and in the master's cabin of the vessel:

"NOTICE OF PREFERRED MORTGAGE

THIS VESSEL IS COVERED BY A FIRST PREFERRED MORTGAGE OF VESSEL

UNDER THE LAWS OF THE UNITED STATES TO SECURE PAYMENT TO

MERCANTILE BANK, N.A.

OR ASSIGNS, THE UNPAID BALANCE OF CERTAIN INDEBTEDNESS.

UNDER THE TERMS THEREOF NEITHER THE MORTGAGOR AND OWNER

OF SAID VESSEL NOR THE MANAGING OWNER, SHIP'S HUSBAND,

MASTER, NOR ANY PERSON TO WHOM THE MANAGEMENT OF THE

VESSEL IS ENTRUSTED, WHETHER APPOINTED BY THE MORTGAGOR,

AS OWNER OF SAID VESSEL, OR BY A CHARTERER, OR BY AN OWNER

PRO HAC VICE THEREOF HAS ANY RIGHT, POWER, OR AUTHORITY TO

CREATE, INCUR, OR PERMIT TO BE IMPOSED UPON THIS VESSEL ANY

LIENS WHATSOEVER OTHER THAN FOR CREW'S WAGES, WAGES OF

STEVEDORES OR SALVAGE."